[No. 1633.  Decided April 5, 1895.]

J. H. GLENN, *Respondent*, v. JOSEPH B. HILL, *Appellant*.

ESCROW — PROMISSORY NOTES — GUARANTY— CONSTRUCTION — REVIEW ON APPEAL.

The deposit of notes with a third party is not a delivery in escrow when the agreement governing the deposit shows that the notes were given in consideration of the sale of certain shares of stock, which were deposited in the hands of such third party along with the notes, and that the shares were not to be delivered up to the purchasers until the payment of the notes nor the notes removed or negotiated pending maturity.

In determining what constitutes an escrow, the language employed, the situation of the parties, the object to be attained, and such other facts as may throw light upon the intention of the parties, must be considered.

The fact that a promissory note was never in the actual possession of the payee, prior to the commencement of a suit thereon, is not of itself sufficient to defeat his right to a recovery.

Upon a guaranty to hold the purchaser of corporation stock " harmless against any loss which may accrue to you from any of the existing liabilities of the Haley-Glenn Company," and "that all the accounts assigned by the Haley-Glenn Company to the Haley Grocery Company can and will be collected," the purchaser, in an action on the guaranty, cannot recover for failure of the old corporation to deliver over certain assets to its successor, which had been organized for the purpose of succeeding to the assets and business of the Haley-Glenn Company.

In such an action, no proof of payment by the purchaser of a certain liability can be introduced, when there is no claim therefor in the pleadings and no allegation is made that the liabilities of the old company were in excess of what they were represented to be.

Under a guaranty to hold one harmless against existing liabilities and uncollectible accounts of a corporation in proportion to the interest he may purchase in its stock, the purchaser cannot by subse-

quently acquiring the whole of the corporate stock from various stockholders, recover for the total loss suffered by the corporation by reason of such liabilities and uncollectible accounts, but is confined in his recovery on the guaranty to the proportion which the shares purchased by him of the guarantor bear to the entire stock.

Errors prejudicial to a respondent will not be noticed in an appellate court when he has taken no appeal from the judgment of the trial court.

*Appeal from Superior Court, King County.*

*Bausman Kelleher & Emory,* for appellant.

*J. T. Ronald,* for respondent.

The opinion of the court was delivered by

GORDON, J.— On the 30th day of January, 1892, the respondent was owner of a portion of the capital stock of a corporation known as the Haley-Glenn Company, doing business at Seattle, which he was at that time desirous of selling to the appellant, who, prior to that time, had no interest in the corporation; and on said day respondent delivered to the appellant the following guaranty:

" *To Joseph B. Hill, Esq., Seattle, Washington:*

"DEAR SIR—In consideration of your agreeing to become a purchaser of stock of the Haley Grocery Company, I undertake to hold you harmless against any loss which may accrue to you from any of the existing liabilities of the Haley-Glenn Company, and I guarantee that all the accounts assigned by the Haley-Glenn Company to the Haley Grocery Company can and will be collected. This guarantee and agreement to hold harmless shall be in proportion to the interest you may purchase in said Haley Grocery Company. Very truly,              (signed)   J. H. GLENN."

For the purpose of effecting the sale, it was agreed that the same should be carried out through the medium of a new corporation to be known as the Haley Grocery Company, to be organized by respondent, ap-

pellant and the stockholders of the Haley-Glenn Company; that the Haley-Glenn Company should transfer all of its assets to the Haley Grocery Company. There were three hundred shares of stock in the new corporation, of which respondent was entitled to one hundred and ninety. Forty-five shares he sold to one Haley, the other one hundred and forty-five shares he sold to the appellant for a consideration of $15,030.70, appellant paying $10,000 in cash and executing two notes of $2,515.35 each, bearing date on said January 30, 1892, and due respectively one and two years after date, with interest at the rate of ten per cent. per annum from date until paid, said notes containing the following stipulation:

"Interest to be paid quarterly, and if not so paid the whole sum of both principal and interest to become immediately due and collectible at the option of the holder of this note."

Respondent delivered to appellant one hundred shares of said stock, and the remaining forty-five shares, together with said notes, were then deposited with one Graves, under the following agreement:

"SEATTLE, WASHINGTON, January 30, 1892.
"*E. O. Graves, Esq., Seattle, Wash. :*

"DEAR SIR: We deposit herewith the following papers :

"1st. Two notes of Joseph B. Hill for $2,515.35 each, one dated on or before one year after date, the other dated on or before two years after date.

"2d. Two notes of John Haley exactly similar to the preceding.

3d. Forty-five shares of the capital stock of the Haley Grocery Company originally issued to James H. Glenn and by him indorsed to Joseph B. Hill.

"4th. Forty-five similar shares indorsed by J. H. Glenn to John Haley.

"The papers are left with you with the following mutual agreement and understanding:

"Messrs. Hill and Haley have purchased each the shares mentioned respectively and have paid J. H. Glenn in their respective notes. The shares are not to be delivered up to the purchasers until the notes are paid, nor are the notes to be removed or negotiated by the payee during the period which they run. On the payment of these notes, which can be done at any time before or after maturity, you will please deliver to the purchasers respectively their shares, and each of the purchasers shall have a right to a separate release on the payment of his individual notes.

　　　　　　　　　　　　J. H. GLENN.
　　　　　　　　　　　　JOSEPH B. HILL.
　　　　　　　　　　　　JOHN HALEY.

"Witness: FRED BAUSMÁN.

"I assent to hold the aforesaid papers on said terms.
　　　　　　　　　　　　"E. O. GRAVES."

Respondent brought this action for the purpose of recovering judgment upon said notes and foreclosing the lien claimed by him on the stock so deposited. Appellant denied the delivery of said notes, and by way of affirmative defense and offset, set up the guaranty herein set out, that he relied upon the guaranty in making said purchase and in executing said notes. Also that, "relying on the guaranty, he [respondent] further purchased shares in the Haley Grocery Company and subsequently became the owner of all its capital stock." He also alleges that of the accounts assigned by the Haley-Glenn Company to the Haley Grocery Company the amount of $3,216.94 was uncollected and uncollectible after the exercise of diligence, etc., and that the various debtors owing said accounts were and are insolvent. Also, that certain assets purchased by the new company of the old corporation have not been delivered to the new company, the value

of said property amounting to $3,842.26. Also, that other assets were found to be deficient in value to the amount of $1,897.80.

The respondent replied, denying the various allegations of new matter set up in appellant's answer. The court below directed a reference for the purpose of determining what accounts assigned by the old corporation to the new remained uncollected and uncollectible. A great deal of testimony was taken by the referee, who thereafter reported to the court that accounts amounting with interest to the aggregate sum of $4,002.46 remained uncollected and uncollectible, and that appellant was entitled to be credited upon said notes in said sum. This report was modified in the lower court by reducing the amount to $3,134.46, of which amount the lower court held that the appellant was entitled to be credited upon said notes in the sum of $1,514.96 only, being twenty-nine-sixtieths of the whole amount of accounts found uncollectible. The court refused to receive proof upon behalf of appellant in support of the other items of counter claim set up in the answer, and rendered judgment in favor of respondent in the sum of $4,388.88, said judgment being declared to be a lien upon the shares of stock so deposited, etc., and directing the sale thereof to satisfy said judgment. From said judgment this appeal is taken.

Assignments 1, 2 and 5 of appellant's assignments of error relate to the delivery of the notes, and will be considered together. Appellant insists that the proof shows that the notes were delivered *in escrow*, and that plaintiff cannot maintain the action. Upon the trial it was shown that plaintiff never had possession of the notes, but that Graves, with whom they had been de-

posited, held them until they were produced by him upon the trial.

We do not think appellant's position is well taken. The terms and conditions upon which the notes and certificate of stock were deposited with Graves were in writing. In his affirmative answer appellant expressly alleges that they were deposited in accordance with the terms and conditions of a written agreement, which he makes a part of his answer. He does not assert or claim in his pleading that they were deposited pursuant to any other arrangement or upon any other terms or conditions than those expressed in said written statement. A delivery *in escrow* is a delivery to a "third party (not the payee), to hold until a certain event happens or certain conditions are complied with, and then the liability of the party commences as soon as the event happens or the conditions are fulfilled, *without actual delivery by the depositary to the promisee.*" Daniel on Negotiable Instruments, § 68.

"The condition to make the instrument an *escrow* must be one to be performed by the grantee and not by the grantor." *White's Admrs. v. Williams*, 3 N. J. Eq. 376.

In determining what constitutes an *escrow* we must look to the language employed, the situation of the parties, the object to be attained, and such other facts as may throw light upon the intention of the parties. In his answer appellant admits that the notes in suit were executed in payment of the shares of stock which he purchased from respondent. There was an absolute sale of the stock, and appellant admits that these notes constituted the consideration paid therefor. The agreement recites, that " Messrs. Hill and Haley have purchased each the shares mentioned respectively, and have paid Glenn in their respective notes. *The shares are*

*not to be delivered up to the purchasers until the notes are
paid,* nor are the notes to be removed or negotiated by
the payee during the period in which they run." We
do not think that the language of the agreement under
which both the notes and the stock were deposited
supports the contention of the appellant that the notes
were delivered in *escrow,* nor do we think that the
nature of the transaction, the circumstances surround-
ing the parties or their manifest purpose, justifies any
such conclusion. The deposit of the notes was made
merely for the convenience of the appellant, to insure
him against any transfer of them pending their ma-
turity, and their *validity* was not dependent upon the
performance by respondent of any condition. He had
transferred the stock and accepted these notes in pay-
ment, and nothing remained for him to do. Their de-
livery was unconditional, save that they were not to be
negotiated. The agreement not to negotiate them was
for the purpose of protecting appellant upon the guar-
anty and to enable him to set off his losses arising
thereunder against the notes; and that is precisely
what he has sought in this action by interposing his
counterclaim. He admits that the stock was bought
*absolutely and paid for by these notes,* and he, as owner
of the stock (including these forty-five shares) has
*asked and obtained in this litigation damages,* growing
out of the sale and respondent's guaranty, and this, we
think, is all that he is entitled to. Nor does the fact
that the notes were never, prior to the commencement
of the suit, in the *actual* possession of the respondent,
defeat his right to a recovery. *Taylor v. Thomas,* 13 Kan.
217; Daniel, Negotiable Instruments, § 68.

The lower court refused to allow the appellant to
show that the Haley-Glenn Company had failed to de-
liver to the new corporation certain assets which he

claims were included in the sale; and also refused to permit him to make proof that certain other assets actually delivered were deficient in value, etc.; and the court's rulings in these regards are assigned as errors.

The learned counsel for appellant insists that he is entitled to recover the same upon the written guaranty above set out, and that " the word ' liabilities,' as used in the guaranty, was the most general word that could be used and was supposed to include, as the parties intended it should, a liability that might arise by putting in a fictitious item among the gross assets." We do not think that the language of the guaranty admits of any such construction. All that respondent guaranteed was, first, against loss accruing to the appellant from any of the existing liabilities of the Haley-Glenn Company; and, second, that the accounts assigned by the old company to the new "can and will be collected." The language employed is neither ambiguous nor uncertain. It will not admit of the meaning which is sought to be attached to it by the appellant, and we think the proof was properly excluded.

Upon the trial the appellant sought to show that there was a liability amounting to the sum of $360 for unpaid taxes, which did not appear in the schedule of the liabilities furnished to appellant at the time of accepting the guaranty in question and making the purchase, and that it was a loss to the appellant, from which the respondent in the written guaranty has covenanted to hold him harmless. Upon respondent's objection the court excluded the proof. Conceding that this was a liability within the meaning of the guaranty, and was a claim against which the appellant, to the extent of the interest which he purchased from respondent in the new company, was entitled to be protected against, still he made no claim for the same in

his answer, and manifestly was not entitled to make proof of it upon trial. Nowhere in his answer does he assert that the liabilities of the old company were in excess of what they were represented to be by the officers of the old corporation or by the respondent. He sought no relief in that regard, and plainly was not entitled to give testimony upon the trial in support of a claim which he had not asserted in his pleadings.

Finally, appellant complains of the action of the court in modifying the report of the referee and reducing the amount of the credit allowed to the defendant upon said notes by reason of the uncollectibility of the accounts transferred by the old company to the new corporation. As already stated, the total number of shares of stock in the new corporation is three hundred. Of that amount, one hundred and forty-five shares were sold by the respondent to the appellant, and the guaranty of the respondent is, "to hold (appellant) harmless in proportion to the interest (which he) may purchase in said Haley Grocery Company." Subsequent to the purchase of respondent's stock, it appears that appellant became the purchaser from others of the remaining stock in the corporation. The referee reported that he was entitled to be credited with the entire amount of accounts found uncollectible. The lower court, however, credited him with twenty-nine sixtieths thereof, being that proportion of the whole sum which the shares of stock purchased by him from respondent bore to the entire stock of the corporation; and we think the court committed no error. It seems to us that in this particular the plain purpose of the guaranty was to protect the appellant merely to the extent of any interest in the corporation which he might purchase from the respondent. It was

intended to cover and embrace the then pending negotiations, and cannot be considered as extending to subsequent purchases from other stockholders in which respondent could have no possible interest.

Counsel for the respondent devotes considerable space in his brief to supposed errors of the court, committed to the prejudice of the respondent. But, inasmuch as he has taken no appeal from the judgment, we are unable to notice them. "Without an appeal a party will not be heard in an appellate court to question the correctness of the decree of the trial court." *United States v. Blackfeather*, 155 U. S. 180 (15 Sup. Ct. 64.)

The judgment will be affirmed.

HOYT, C. J., and ANDERS, DUNBAR and SCOTT, JJ., concur.